HIRAM COOMBS, Exr., *et al*. Appellees, *vs*. CHARLES H. CARNE.—(EMILY BLANCHE PHELPS *et al*. Appellants.)

*Opinion filed October 26, 1908—Rehearing denied Dec. 4, 1908.*

1. WILLS—*creditors in Illinois must be paid before creditors in foreign State.* Where a foreign will disposing of real estate in Illinois is probated in Illinois and letters testamentary are issued to an executor who is a resident of Illinois, only the residue of the Illinois property remaining after the payment of creditors in Illinois can be removed to the foreign State for the purpose of paying creditors residing there.

2. SAME—*provisions of will construed as to payment of debts and expenses of administration.* Where a will made in a foreign State and disposing of property in that State and in Illinois provides that the executors shall pay "all my debts and the expenses of administration," a subsequent provision devising the remainder of the undisposed property in Illinois "after the payment and discharge of all my debts and obligations and the expenses of administration in that jurisdiction," charges the property in Illinois with the payment of the expenses of administration in Illinois but does not limit the debts and obligations to Illinois debts.

3. SAME—*will construed as not appropriating proceeds of Illinois property to the payment of foreign debts, alone.* Where the first paragraph of a foreign will directs the executors, among other things, to pay all the testator's debts, a subsequent paragraph directing the sale of the testator's interest in a certain building in Illinois for the purpose of complying with the first paragraph and

in liquidating the testator's indebtedness on property in the foreign State refers to all indebtedness of the testator, and the proceeds of the sale should be first applied to payment of Illinois debts and the residue, if any, to the payment of foreign indebtedness.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

JESSE A. & HENRY R. BALDWIN, for appellants.

EDWIN WHITE MOORE, and H. VANDERPLOEG, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

John Carne died on December 22, 1905, in Ventura county, California, leaving property in that State, and also in Cook county, in this State, and leaving a last will and testament, of which his son Edgar W. Carne, a resident of California, and the appellee Hiram Coombs, a resident of this State, were appointed executors. The will was probated in California on January 9, 1906, and letters testamentary were issued to the executors. It was probated in Cook county, in this State, on May 18, 1906, and letters testamentary were issued to said Hiram Coombs. The heirs of the testator are his eight children,—Edgar W. Carne, Charles H. Carne, Caroline E. Blackstock, Marion L. Hendrickson and Inez G. Carne, residents of California, and Elizabeth M. Borwell, Emily B. Phelps and Reginald G. Carne, residents of this State. They are all named as beneficiaries under both specific and residuary devises, except Emily B. Phelps, who is to share in the residuary estate in Illinois, only. The amended bill in this case was filed by Hiram Coombs, the executor in Cook county, and Reginald G. Carne, one of the devisees, for a construction of the will, and the devisees and parties interested, including the appellants Emily B. Phelps and Elizabeth M. Borwell, were made defendants.

The will was made in California and contains sixteen paragraphs, but the controversy in this case concerns the proper construction of the first, twelfth and fourteenth paragraphs. The testator owned two hundred and fifty shares of stock in the First National Bank of Ventura, California, which were free from liens or encumbrances and were fully paid up, and one hundred and twenty-five shares of stock of the Home Savings Bank of Ventura, on which there remained unpaid $6250. By various paragraphs of the will he distributed among his children Edgar W. Carne, Charles H. Carne, Marion Louise Hendrickson and Inez G. Carne, residing in California, these shares of bank stock, with the exception of twenty-five shares of capital stock of the First National Bank of Ventura, which he gave to Catherine Mc-Grath, giving to each a specified number of shares, and providing as to the capital stock of the First National Bank that it should be free and clear of all liens and encumbrances, and as to the capital stock of the Home Savings Bank, that it should be free and clear of all liens and encumbrances and fully paid up. He also devised to each of said four children an undivided interest in his real property known as the "Bank Building" in San Buenaventura, California. He devised to his daughter Caroline Edith Blackstock certain real estate in California. By the ninth paragraph he devised to his son Reginald G. Carne an undivided one-half interest in his real estate situated at the north-west corner of Lincoln and Walnut streets, in Chicago, subject to all indebtedness thereon, and directed his executors to surrender and cancel any unpaid promissory notes he might hold against said son and not to collect any rent due him at the time of his death. By the tenth paragraph he devised to his daughter Elizabeth M. Borwell the other undivided one-half interest in said real estate in Chicago, subject to all indebtedness thereon, and directed his executors to surrender and cancel and deliver to her husband all promissory notes or other evidences of debt which

he might hold against said husband. The first, twelfth, thirteenth and fourteenth paragraphs are as follows:

"*First*—I direct that the executors of this will, as soon as they shall have sufficient funds in their hands, pay the expenses of my last sickness, my funeral charges, all my debts and the expenses of administration.

"*Twelfth*—I give .and devise to my daughters Elizabeth Mary Borwell and Emily Blanche Phelps, and to my son Reginald G. Carne, share and share alike, all the remainder of my property, of whatever kind and nature, situate in the State of Illinois and not herein disposed of, after the payment and discharge of all my debts and obligations and the expenses of administration in that jurisdiction, but I direct that any money or funds I may have advanced, either in kind or by way of guarantee or endorsement, to my son Reginald G. Carne, or his late partner, G. W. Phelps, shall be charged separately against the respective interests or parts of said Reginald G. Carne and Emily Blanche Phelps and deducted from his or her share.

"*Thirteenth*—I give, devise and bequeath, share and share alike, to Edgar W. Carne, Charles H. Carne, Caroline Edith Blackstock, Marion Louise Hendrickson and Inez Gertrude Carne, my children hereinabove named, all the rest, residue and remainder of my estate, real and personal, and wherever situate.

"*Fourteenth*—I direct that if I die seized or possessed of an interest in the reversion in and to that certain real property situate at 160 and 162 Washington street, in the city of Chicago, Illinois, being the east half of lot 3, in block 35, in the original town of Chicago, and upon which the Journal building now stands, that said interest be sold and disposed of by my executors hereinafter named, and that the proceeds from such disposition and sale, and rental due or to accrue thereon, be used for the purposes of complying with my directions in paragraph first hereof, and in liquidating and paying any and all indebtedness upon my

real and personal property in the State of California, my stock in the First National Bank of Ventura and that of the Home Savings Bank of Ventura, if any such liens or encumbrances there be."

The question about which the parties disagree relates to the disposition to be made of the proceeds of the testator's interest in the Journal building, which the fourteenth paragraph directs shall be sold and the proceeds be used for the purpose of complying with the directions contained in the first paragraph, and in liquidating and paying the indebtedness upon the California property and liens or encumbrances on the bank stock. The theory set up by the bill and contended for by appellees is, that the executor should cause the Journal building property to be sold and the proceeds applied upon the debts in California, while appellants contend that the proceeds were intended to be applied to the payment of testator's debts generally, both in this State and in California, and that under the law property in this State must be applied to the payment of creditors in this State. Counsel for appellees argue that the testator, in paragraphs 1 and 12, had in mind two sets of debts, with the attending expenses of administration, and intended by the fourteenth paragraph that the proceeds of the Journal building should be applied to the debts in California only, and that paragraph 12 shows that the Illinois debts are to be paid out of Illinois property other than the proceeds of the Journal building, which was devoted to the payment of California debts. They insist that the general scheme of the testator was to give the California property to the children in California free from debts, liens or encumbrances, which should be paid with the proceeds of the Journal building in Illinois, and that the property in Illinois should go to the three children who live in Illinois, charged with the debts provable here. The circuit court adopted the theory of appellees and decreed accordingly, and from the decree this appeal was taken.

236—22

We find no sufficient grounds to sustain the conclusion of the circuit court either in the language of the will or the circumstances surrounding the testator when it was made. The fourteenth paragraph directs that the interest of the testator in the Journal building shall be sold and the proceeds be used for the purpose of complying with the directions of the first paragraph, which are, that the executors shall pay the expenses of the testator's last sickness, his funeral charges, all his debts and the expenses of administration. The language used includes all debts, and not merely California debts, and the proceeds are to be further used in liquidating and paying indebtedness upon the testator's property in California and liens and encumbrances on his bank stock. The testator lived in California and probably contemplated that the expenses of his last sickness and the funeral charges would accrue there, but that affords no sufficient reason for limiting the language of the first paragraph to a portion of his debts. It is clear that he expected there would be expenses of administration in two jurisdictions, and he charged the property in this State, by the twelfth paragraph, with the payment of the expenses of administration in this State, but in that paragraph he did not limit the debts and obligations to Illinois debts. The devise is of the remainder of the testator's property situate in this State and not disposed of by the will, after the payment and discharge of all his debts and obligations and the expenses of administration in this State. The words "in that jurisdiction" qualify and limit the expenses of administration and not the debts and obligations of the testator. The disposition of the real property in this State must be governed by our laws, and if the testator designed by the fourteenth paragraph to provide that his interest in the Journal building should be sold and the proceeds removed to California for the payment of California creditors, the provision would be in conflict with our laws and could not be made effective. The will was probated

here, as the testator contemplated that it would be, and letters testamentary were issued to one of the executors who resides here, and under the law only the residue of the testator's property remaining after the payment of creditors in this State could be removed from the State for the payment of creditors in California. It is the universal policy of the law to preserve local assets for the satisfaction, in the first instance, of local claims. (18 Cyc. 1229.) The testator intended that those to whom bank stock was given should receive it free from all liens and encumbrances and fully paid, but he also intended that his son Reginald G. Carne, and his daughter Elizabeth M. Borwell, should have the real estate situated at the north-west corner of Lincoln and Walnut streets, in Chicago, subject only to the indebtedness thereon, and we find no warrant for saying that he intended the proceeds of the Journal building to be applied only to the payment of California debts, with the possible effect of taking the property so devised to the son and daughter for the payment of Illinois debts. Testator had in mind the administering of his estate in two jurisdictions, and by charging the residuary estate in Illinois with the expenses of administration here he created an exception to the general language of the first paragraph directing the payment of expenses of administration generally. But his language does not indicate a purpose to divide his debts into two classes. The language used in the first paragraph is, "all my debts," and in the twelfth, "all my debts and obligations," and we regard this language, which is clear and unambiguous, as a safer guide than a resort to uncertain conjecture. The testator gave his California property to his children residing in that State, and the Illinois property, except his interest in the Journal building, to his children residing here, which was most natural and raises no inference that he had in mind two sets of beneficiaries, to be treated differently. A claim of $15,800 against the estate was allowed by the probate court of Cook county, which

is primarily the obligation of Reginald G. Carne, and the testator designed that obligation to be paid out of his son's share of the residuary estate situated here. If there is such property, that debt should be paid from the interest of Reginald W. Carne therein.

As we construe the will, the interest of the testator in the Journal building is to be sold and the proceeds to be applied first to the payment of creditors in this State and next to the payment of debts and expenses of administration in California. The real estate of the testator in this State not specifically devised may be sold and devoted to paying the expenses of administration in this State after applying the cash in bank in Chicago to such purpose, and the residue be applied to the payment of debts and obligations of the testator in this State or elsewhere. The property in this State specifically devised can only be resorted to for the payment of creditors, and not for the purpose of paying any unpaid balance on bank stock specifically bequeathed by the will. Any proceeds of the testator's interest in the Journal building remaining after the payment of debts may be applied to the payment of the unpaid balance on bank stock or other indebtedness, as directed by the fourteenth paragraph. Any residue of the property in Illinois is devised to the testator's daughters Elizabeth M. Borwell and Emily B. Phelps and his son Reginald D. Carne, but the claim of $15,800 arising by way of guaranty in favor of the Corn Exchange National Bank, which is primarily the indebtedness of said Reginald D. Carne, is to be deducted from his share.

We have construed the will only so far as property in this State is involved. This construction differs from that adopted by the circuit court, and the decree of that court is therefore reversed and the cause is remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*